IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| PANASYSTEM HANDELS GMBH,<br><br>    Plaintiff,<br><br>v.<br><br>CLN WORLDWIDE LLC,<br><br>    Defendant. | Case No. 3:18-cv-342 |

**COMPLAINT**

The Plaintiff, complaining of the Defendant, alleges and says:

**PARTIES AND JURISDICTION**

1. Plaintiff PANASYSTEM HANDELS GMBH (hereinafter "PANASYSTEM") is a corporate entity organized under the laws of the Republic of Austria, with its principal place of business in Vienna, Austria.

2. Defendant CLN WORLDWIDE LLC (hereinafter "CLN") is a North Carolina limited liability company, with its principal place of business located at 8530-A Steele Creek Place Drive, Charlotte, North Carolina 27273. The Defendant may be served with the Summons and Complaint by and through its registered agent, David E. Sitton, at 8530-A Steele Creek Place Drive, Charlotte, North Carolina 27273.

3. This action is an action for common law conversion and for replevin, pursuant to Rule 64 of the Federal Rules of Civil Procedure and N.C. Gen. Stat. §§ 1-472 *et. seq.*, of certain property. The Defendant resides in the Western District of North Carolina and the property that is

the subject of this action is situated in the Western District of North Carolina. Venue therefore is proper in this district pursuant to 28 U.S.C. § 1391.

4. This case is a civil action where the matter in controversy exceeds $75,000. CLN is a citizen of North Carolina and PANASYSTEM is a citizen and subject of a foreign state. This Court therefore has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

**FACTS**

5. PANASYSTEM is one of the world's leading suppliers of carbon black, supplying over 80,000 metric tons of the material to customers in twenty countries in Europe and North America. Carbon black is mainly used as a reinforcing filler in tires and other rubber products. It is also used in plastics, paints, and inks.

6. CLN is in the business of providing warehousing and related services to companies like PANASYSTEM.

7. In 2013, PANASYSTEM began importing carbon black into the port of Charleston. Up until approximately October of 2017, this carbon black was, after importation, warehoused in Summerville, South Carolina (the "Summerville Warehouse") and thereafter shipped, as and when needed, to PANASYSTEM's United States customers. The Summerville Warehouse was operated by an affiliate of defendant CLN.

8. In 2017 and 2018, one of PANASYSTEM's United States customers was Hexpol Compounding NC Inc. (hereinafter "Hexpol"), a Statesville, North Carolina headquartered entity engaged in the business of producing synthetic compounds (including rubber materials) for the industrial and transportation market. Hexpol had an ongoing and continual need for carbon black, which PANASYSTEM met through periodic shipments out of the Summerville Warehouse to a

warehouse located at 1211 N. Barkley Road in Statesville, North Carolina (hereinafter the "Statesville Warehouse"). The Statesville Warehouse was and is operated by defendant CLN.

9. In approximately October of 2017, CLN's affiliate ceased operations at the Summerville Warehouse. Without prior notice to PANASYSTEM, CLN's affiliate transferred all of PANASYSTEM's carbon black in the Summerville Warehouse to the Statesville Warehouse, where it was placed by CLN's affiliate into the control, custody, and possession of defendant CLN. CLN's affiliate does not have, and has never had, a certificate of authority to do business in North Carolina.

10. After the transfer of the carbon black from the Summerville Warehouse to the Statesville Warehouse, PANASYSTEM continued to have customers other than Hexpol who ordered carbon black. Upon order, PANASYSTEM would ship carbon black to those customers out of the Statesville Warehouse. CLN would facilitate the shipment of carbon black to these customers through the provision of various services ancillary to its warehouse storage operations.

11. In addition, after the transfer of the carbon black from the Summerville Warehouse to the Statesville Warehouse, PANASYSTEM continued to supply carbon black to Hexpol. Furthermore, Hexpol continued to store materials, on it is own account, at the Statesville Warehouse.

12. PANASYSTEM is the owner of carbon black situated within the Statesville Warehouse, some of which was intended to be sold to Hexpol and some of which was intended to be sold to other customers. When Hexpol required additional carbon black, Hexpol would contract with PANASYSTEM for additional carbon black of the type and in the quantity required. The carbon black so ordered would then be identified and title to the same would pass to Hexpol

pursuant to the contract between the parties. PANASYSTEM would then invoice Hexpol for the carbon black ordered.

13. On May 21, 2018, an agent for CLN informed PANASYSTEM that CLN had placed on hold all deliveries of PANASYSTEM's carbon black to all customers. At the time, PANASYSTEM had outstanding orders from customers (including customers other than Hexpol) that PANASYSTEM was endeavoring to fulfill. On May 22, 2018, David Sitton – by and through an email identifying himself as an agent of "CLN Worldwide" – stated to PANASYSTEM that, "All inventory and deliveries to Hexpol have been stopped pending payment" by Hexpol. "Our attorneys are now in discussion. We'll notify you as soon as we have a resolution." Later that same day, Sitton informed PANASYSTEM that "Hexpol has not paid their rent in more than 6-months among other outstandings. They have been completely unresponsive since January about any of these matters."

14. On May 23, 2018, David Sitton – by and through an email identifying himself as an agent of "CLN Worldwide" – stated to PANASYSTEM that, "Hexpol was intentionally not paying and in breach of their contract[.] [W]e placed a warehouse lien on the their inventory per UCC article 7-209. The material that you reference here was included within their inventory. As soon as Hexpol settles it's outstanding obligations we will of course make that material available to them" [grammatical errors in the original].

15. On June 4, 2018, an agent of CLN informed PANASYSTEM that "Due to the outstanding issue with Hexpol/Panasystems" we will need to cancel the loadings scheduled for this week pending some resolution."

16. PANASYSTEM is the owner of carbon black currently under CLN's control, custody, and possession at the Statesville Warehouse (hereinafter, the "Goods") of the following

grades and in the following amounts: (a) Grade N660 (3 super sacks constituting 2.7 metric tons of carbon black); (b) Grade N550 (440 super sacks, constituting 396 metric tons of carbon black); and (c) Grade N650 (393 super sacks, constituting 353.7 metric tons of carbon black). The market value of the Goods is $578,843.10.

17. CLN has refused, and continues to refuse, to permit PANASYSTEM to remove the Goods (or any portion thereof) from the Statesville Warehouse or to ship the Goods (or any portion thereof) to PANASYSTEM's customers. PANASYSTEM has repeatedly demanded the return of the Goods to PANASYSTEM. Notwithstanding these demands, CLN has refused to return the Goods.

18. CLN is in error in its belief that it is entitled to assert a warehouse lien against the Goods because:

    a. The sums allegedly owed to CLN by Hexpol are unrelated to the Goods.

    b. The Goods were being held by CLN for PANASYSTEM's account, not Hexpol's account. Indeed, at all times relevant hereto, CLN invoiced PANASYSTEM for the cost of warehousing the Goods, which invoices PANASYSTEM paid.

19. PANASYSTEM is the legal owner of the Goods that are being unlawfully detained by CLN. Under UCC Article 2-401, title to the carbon black cannot pass until (at the earliest) the goods are identified as goods subject to the contract between Hexpol and PANASYSTEM. Because identification has not occurred as to any portion of the Goods, title cannot possibly have passed to Hexpol over any portion of the Goods. CLN is wrong, therefore, in contending that Hexpol is the owner of any portion of the Goods.

20. In addition to damages resulting directly from conversion of the goods (valued at $578,843.10), PANASYSTEM has suffered substantial consequential damages including lost

profits resulting from PANASYSTEM's inability to fulfil orders to customers during the period of unlawful detention of the Goods.

## FIRST CLAIM FOR RELIEF
### (Conversion)

21. The Plaintiff realleges and incorporates herein the allegations in paragraphs 1 through 20.

22. PANASYSTEM is the owner of the Goods.

23. CLN has wrongfully converted the Goods by wrongfully depriving PANASYSTEM of the Goods. CLN has, without authorization, excluded PANASYSTEM from exercising its rights and ownership over the Goods and prevented PANASYSTEM from accessing or recovering the Goods.

24. PANASYSTEM is entitled to an order of replevin for the return of the Goods.

25. PANASYSTEM is entitled to judgment against CLN for the actual and consequential damages, including lost profit, resulting from CLN's conversion of the Goods.

## PRAYER

WHEREFORE, the Plaintiff respectfully prays the Court:

1. That the Court enter a replevin order, ordering the Defendant to return the Goods, pursuant to Rule 64 of the Federal Rules of Civil Procedure and N.C. Gen. Stat. §§ 1-472 *et. seq.*;

2. For an award of damages against the Defendant in an amount greater than $75,000;

3. For costs and attorney's fees;

4. For a trial by jury as to all issues of fact; and

5. For such other and further relief as the Court may deem just and proper.

THIS THE 28th day of June, 2018.

        **JERRY MEEK, PLLC**

     By: /Gerald F. Meek
        GERALD F. MEEK
        N.C. Bar Number 24930
        5950 Fairview Rd., Suite 700
        Charlotte, NC  28105
        Telephone:  704.845.9490
        Fax:  704.837.7056
        jmeek@jerrymeek.com

        Counsel for the Plaintiff